PER CURIAM.
This appeal, the second involving these parties, is an appeal from a judgment denying the Appellants’ motion for Rule 60(b)(6), A.R.Civ.P., relief. We reverse and remand with directions.
The following facts were presented in support of the Appellants’ motion:
Sometime in 1981, Billy J. Blackwell saw a newspaper advertisement of some 79 acres of land for sale in Marshall County. He contacted the owner, Albert J. Adams, and, after viewing the property, Blackwell and his wife agreed to buy it for $75,-000.00. No written agreement was entered into, but Blackwell paid Adams $1,000 earnest money. Thereafter, Adams was involved in a bankruptcy proceeding wherein Blackwell was listed as a creditor for $1,000. The sale was not consummated at this time.
After the bankruptcy proceedings were resolved, Adams contacted Blackwell about whether he was still interested in buying the property. He was, and Adams’s attorney prepared a written sales contract whereby the Blackwells agreed to purchase the property for $74,000.00. They paid an additional $100 earnest money at the time the contract was executed on August 26, 1982, which provided that the sale was to close on or before October 26, 1982.
The Blackwells were unable to find a lender who would finance the purchase because there was an incomplete structure on the property. They did not close on October 26, 1982, as the contract provided. On March 24, 1983, Adams and his wife filed suit against the Blackwells, claiming damages for breach of contract or, alternatively, specific performance of the contract.
The case was set for trial on August 24, 1983, and the Adamses and the Blackwells, with their respective lawyers, appeared for trial. The Adamses still wanted to sell the property, and the Blackwells still wanted to buy it, so they discussed settling the lawsuit. These discussions took place in the hallway of the courthouse. Mr. Blackwell summarized the agreement which the parties reached in these words:
“The settlement was that I pay three thousand dollars and be given an additional thirty days to secure financing and if I didn’t secure financing within the thirty day period, there would be another hearing for the Court to assess damages, if any.”
The Blackwells did pay the Adamses an additional $3,000 that day and left. The two lawyers then informed the trial judge that they had reached an agreement. The trial judge then entered the following:
“Come the parties by their attorneys, J. Robert Miller, Esq., for the plaintiffs and Don Temple Terrell, Esq., for the defendants, and by agreement of the parties, said agreement having been submitted to and considered by the Court, it is ordered by the Court as follows:
“1. That the plaintiffs have and recover of the defendants the sum of $74,-000.00 together with the costs in this béhalf expended.
*682 “2. That upon payment of the said sum of $74,000.00 within thirty (30) days from the date of this Judgment the plaintiffs will execute and deliver a good and sufficient warranty deed conveying to defendants the real estate described in the Contract dated the 26th day of August, 1982, free and clear of all encumbrances.
“3. Upon failure of the defendants to pay the sum of $74,000.00 within thirty (30) days from the date of this Judgment plaintiffs may proceed .to execution as provided by Alabama Rules of Civil Procedure.”
When Mr. Blackwell saw the judgment several days later, he pointed out to his lawyer that it did not represent the agreement reached between the parties, in that they had not agreed that the Blackwells would pay the balance of the purchase price within 30 days in exchange for a deed to the property on the condition that if they did not come up with the balance within 30 days, the sellers would have a judgment for the balance. In other words, Blackwell said, the parties had not agreed to any amount as damages for breach of the contract in the event the Blackwells were unable to come up with the full amount of the purchase price within 30 days. Blackwell’s attorney assured him he would file a motion to get this discrepancy cleared up.
Within 30 days, he did file a motion for new trial or to vacate, alter, or set aside the judgment, which asked the court to alter or amend the judgment because it was “defective in that it does not state the amount of damages which the plaintiffs would be entitled to in the event the defendants are unable to pay the full $74,000 within thirty days.” The motion asked for a new trial to allow the parties to establish the damages, if any, which the plaintiffs would be .entitled to for breach of contract.
The trial court did not hear any evidence in support of the motion, and it was overruled by operation of Rule 59.1, A.R.Civ.P.
The Blackwells appealed from the order overruling their post-judgment motion. The record, of course, consisted only of pleadings, since no trial was had and no hearing was held on the motion. Therefore, none of the facts set out above were before this Court. The judgment appealed from was summarily affirmed, Blackwell v. Adams, 467 So.2d 680 (Ala.1984). (That cause was placed on rehearing upon this Court’s own motion, and by a separate order of this Court, this date entered, that cause is reversed and remanded for the entry of an order consistent with the instant opinion.)
The Blackwells thereupon filed their motion for relief under Rule 60(b)(6), A.R. Civ.P., in which the above facts were adduced. There was no evidence that the Blackwells agreed to pay the Adamses $74,000 whether or not the Adamses produced a deed to the property. The evidence was uncontradicted that the Black-wells’ lawyer was authorized only to negotiate for a 30-day extension of time in which to permit the Blackwells to try to raise the $74,000 to specifically perform the contract. He had no authority to bind his clients to pay an equal amount as damages for breach of the contract. Mr. Blackwell testified that he was told there would be another hearing to assess damages for breach of the contract, if he was unable to complete the purchase.
At the conclusion of the hearing on the 60(b) motion, the following occurred:
“THE COURT: Let me ask you something: Is this the second attack on this judgment? The first one by motion for new trial and then an appeal and now this. How many collateral attacks can you have against a judgment?
“MR. McLAIN: It’s my understanding it’s not limited....

“THE COURT: Have you read the case of Malloy against ... I forget his name but he’s a lawyer down around Elba, in that area?
“MR. McLAIN: Judge, I’m not familiar with that.
“THE COURT: It says you can’t have but one collateral attack on a judgment. *683 It’s in the ABR [Alabama Bar Reports, reprints of Alabama Supreme Court ‘slip opinions’] about a month ago. You might try to find it....”
From the foregoing, it appears'that the trial court was of the opinion that he had no jurisdiction to entertain the Black-wells’ motion under A.R.Civ.P. 60(b), because he believed it was a second collateral attack on a judgment. In this he was incorrect.
Be that as it may, it is also obvious that it would be unjust to deny some relief from the so-called consent judgment. It is apparent from an application of common sense that no reasonable man would agree to pay as damages for breach of a contract to purchase land an amount equal to the sum required for specific performance of the contract. The Blackwells are put in the position of having allegedly agreed to pay $74,000 for the Adamses’ land with the provision that if they did not pay that amount within 30 days, they would pay $74,000 as damages for breach of the contract. It would be inequitable to require them to do so, because it would allow the Adamses to get much more than the benefit of their bargain, without performing their part of it. This violates equitable principles, in that it would unjustly enrich the Adamses.
These references to equitable principles are not misplaced, because principles of equity govern the determination of whether Rule 60(b) relief from a judgment should be granted. C. Wright & A. Miller, Federal Practice and Procedure, Civil, § 2863 (1973). In fact, subpart (6) of Rule 60(b) was added to allow courts to vacate judgments when that is necessary to accomplish justice. Wright & Miller, supra. This Court has consistently so held. As Justice Almon said, speaking for the Court in Giles v. Giles, 404 So.2d 649, 651 (Ala. 1981):
“Our Rule 60 is almost identical to its Federal counterpart. Wright & Miller, Federal Practice and Procedure: Civil § 2864 provides us with a general statement:
“ ‘A quite typical kind of case is that in which a party comes in more than a year [four months] after judgment to assert that he is the victim of some blunder by his counsel. Claims of this kind seem to fit readily enough within such grounds as mistake, inadvertence, and excusable neglect, all stated in clause (1), and courts frequently have so reasoned and held that clause (6) was inapplicable. But if the court is persuaded that the interests of justice so require, it is likely to find aggravating circumstances sufficient to permit it to say that the case is properly within clause (6).’

“... The rules of civil procedure have been designed to allow some flexibility, particularly in an effort to do what is right and just.”
See, also, Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1980); Ex parte Hartford Insurance Company, 394 So.2d 933 (Ala. 1981); and Young v. Reddock, 437 So.2d 1247 (Ala.1983).
The only reasonable explanation for the entry of the judgment in this case is a misunderstanding between the litigants, the lawyers, and the trial judge. No reasonable man would consent to the terms set out in the judgment. It is unjust to the Blackwells. Our legal system cannot tolerate such injustice, and a fair interpretation of the Rules of Civil Procedure not only supplies a remedy, but also gives meaning to the spirit behind those rules. The courts of this state simply cannot be without power to remedy a wrong of this magnitude.
There is another reason why the judgment cannot stand. The evidence is without contradiction that the Blackwells never authorized their lawyer to consent to the judgment as entered. No one disputes this fact. Are the Blackwells nevertheless bound by the judgment? Since 1852, the following statute has expressed the law in this state:
*684 “An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.” (Originally codified at Ala.Code 1852, § 743, now found in § 34-43-21, Ala. Code 1975).
In Senn v. Joseph, 106 Ala. 454, 457-58, 17 So. 543-44 (1894), this Court addressed the effect of that statute:
“We do not think the effect of this statute is to invest the attorney with power over the entire cause equal to that of his client, but to invest him with authority to bind his client in all matters which relate to the prosecution or defense of the rights of his client, to collect and receipt for him, to sue out and direct process, to make all such preliminary agreements as he may deem necessary to lead to or secure a trial of the cause, and settle, by agreement or waiver, any and all questions which incidentally arise during the progress of the trial. Many other instances or powers might be enumerated. The statute does not enlarge the duties of an attorney, nor give him authority to compromise the claim of his client, whether liquidated or unliquidated, admitted or controverted. In this particular his duties and authority are the same as they were or would be without the statute. Courts often set aside agreements of counsel because improvidently made, but orders of this kind apply to agreements within the scope of the authority of counsel. The action of the court would not be based upon the grounds of ‘improvidence’ if there was no authority for making the agreement. We have many decisions rendered since the adoption of the statute found in section 866, [Code 1886] which declare that an attorney has no authority to compromise a claim before suit, nor after it has been reduced to judgment. We are not aware that any decision has been rendered in which it was held that he had authority to compromise a pending suit, and we see no sound reason for making a distinction. Before suit he has authority to collect, and not to compromise. The purpose of the suit is to collect. All authority necessary to prosecute the claim by suit to judgment is conferred upon an attorney authorized to sue. The object of the suit is to collect the demand. The power to compromise the demand does not arise from the authority to sue. It is not incidental, and requires express authority. To give the statute the construction contended for by appel-lees would invest an attorney after suit has been instituted with power, coequal with his client, over the cause of action. The decisions of this court do not justify the contention, and we are of opinion it would exceed the intention of the legislature. Robinson v. Murphy, 69 Ala. 543; Rosenbaum v. State, 33 Ala. 354; Lock Co. v. Harwell, 88 Ala. 441, 6 South. 750; Chapman v. Cawles [Cowles], 41 Ala. 103; West v. Ball, 12 Ala. 340; Charles v. Miller, 36 Ala. 141; Harvey v. Thorpe, 28 Ala. 250; Ex parte Hays, 92 Ala. 120, 9 South. 156; Gullett v. Lewis, 3 Stew. 23. Our conclusion is the circuit court erred in refusing the motion to set aside the judgment rendered upon the written agreement of counsel, made without authority, and a judgment will be here rendered to that effect. Judgment set aside, and cause remanded for trial.”
Since that time, our cases have consistently held that whether an attorney has authority to bind his client by an agreement to settle the case by consent is a question of fact. Brocato v. Brocato, 332 So.2d 722 (Ala.1976), and Young v. Red-dock, supra. Here, the facts establish without contradiction that the Blackwells did not authorize their attorney to consent to the judgment which was entered. Bradford Exchange v. Trein’s Exchange, 600 F.2d 99 (7th Cir.1979), like this case, involved an appeal from a denial of a Rule 60(b) motion. There the federal court said:
“An attorney may not consent to a final disposition of his client’s case without express authority. Although an attorney of record is presumed to have his client’s authority to compromise and settle litiga-
*685 tion, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry....”
The court then noted:
“The obligations which Trein’s assumed were so onerous and costly that it is dubious whether Trein’s would have given their attorneys authority to stipulate to [a judgment] with such a provision.”
The obligation which the Blackwells as-sertedly assumed under the consent judgment is likewise so onerous and costly that it is indeed dubious that they or anyone else would have authorized their attorney to consent to such a provision, but we need not speculate, since, under the uncontro-verted facts, they did not authorize him to do so.
This case represents an example of how, in extreme circumstances, injustice rather than justice may result from the operation of the rules. Here, if the trial court had held a hearing on the motion to alter or amend the judgment or alternatively grant a new trial, rather than allow it to be overruled by operation of law under Rule 59.1, it would have been apparent that a mistake had been made. Likewise, if a record had been made, it would have been obvious to this Court on the first appeal error had occurred. Then, when the facts were finally presented on the Rule 60 motion, the trial court erroneously concluded that it had no jurisdiction to entertain it. As a result, these litigants have never actually had a judicial determination of the litigation on the merits. We can do no less than remand this cause to the trial court with directions to set aside the.judgment entered on August 24, 1983, and hold a hearing and determine, on the evidence, the amount of damages, if any, the Adamses have incurred for breach of the contract for the sale of the land involved.
REVERSED AND REMANDED WITH DIRECTIONS.
MADDOX, JONES, EMBRY and ADAMS, JJ., concur.
BEATTY, J., concurs in the result.